```
_____
                                    :
THOMAS L. BULLOCK,                  :
                                    :
        Plaintiff,                  :    Civ. No. 17-271(NLH)(AMD)
                                    :
     v.                             :    OPINION
                                    :
GERALDINE COHEN, et al.,            :
                                    :
        Defendants.                 :
_____:
```

APPEARANCE:
Thomas L. Bullock
524 E. Pine Street
Millville, NJ 08330
     Plaintiff Pro se

HILLMAN, District Judge

     Plaintiff Thomas L. Bullock ("Plaintiff") seeks to bring a
civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No.
1.) Based on his affidavit of indigence (ECF No. 1-1), the
Court previously granted Plaintiff leave to proceed in forma
pauperis and ordered the Clerk of the Court to file the
Complaint. (ECF No. 2.)

     At this time, the Court must review Plaintiff's Complaint,
pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it
should be dismissed as frivolous or malicious, for failure to
state a claim upon which relief may be granted, or because it
seeks monetary relief from a defendant who is immune from such

relief.  For the reasons set forth below, the Court concludes
that the Complaint should be dismissed without prejudice.

I. BACKGROUND[1]

Plaintiff brings this civil rights action, pursuant to 42
U.S.C. § 1983, against the following defendants: (1) Geraldine
Cohen, Warden of Atlantic County Justice Facility ("ACJF"); (2)
Cheryl DeBoise, a medical services supervisor at ACJF; (3)
Atlantic County Chairman Frank Formica; and (4) Atlantic County
Executive Dennis Levinson.

In his Complaint, Plaintiff presents a litany of grievances
about the conditions at ACJF.  Plaintiff asserts that ACJF is
overcrowded, as evidenced by the fact that three men share a
cell designed for one person, and by the fact that there are
only two showers per 48-60 people.  (Compl. at ¶ 4.)  Although
Plaintiff fails to specify whether he himself is a convicted
inmate or a non-convicted pretrial detainee, he complains that
ACJF improperly intermingles convicted inmates, pretrial
detainees, and psychiatric patients.  (Id.)

Plaintiff alleges that a federal inmate whom he was housed
with had scabies.  (Id.)  Plaintiff claims "that within two
weeks [of being housed together, that inmate] claimed something

_____
[1]    The factual allegations detailed herein are taken from
Plaintiff's Complaint, and are accepted as true for purposes of
this screening only.  The Court makes no findings as to the
veracity of Plaintiff's allegations.

was itching him." (Id.) While Plaintiff notes that he and that inmate received medical treatment after reporting the issue to ACJF medical staff, Plaintiff claims that this would never have happened had ACJF properly screened this inmate. (Id.)

Plaintiff complains about ACJF's unclean and unsanitary conditions. Plaintiff notes that the showers have mold and mildew, and that inmates frequently complain of dizziness after showering. (Id.) Plaintiff asserts that there are frequent sewage backups. (Id.) Plaintiff also asserts that doors in the jail frequently malfunction, and that this "causes all types of problems[, e.g.,] eating late, missing court, etc." (Id.)

Plaintiff complains about the food served at ACJF. Plaintiff avers that the food portions are inadequate, that leftovers are frequently served, and "90% of the time food is not cooked, cold or objects are found." (Id.) Plaintiff claims that "to question the issue, you are threatened, other times locked down." (Id.)

Plaintiff complains that the ACJF commissary engages in "price gauging," as evidenced by the fact that it charges $1.16 for one package of ramen noodles, $.61 for an oatmeal packet, and $3.25 for indigent kits. (Id.) Plaintiff also complains that ACJF charges for medical and dental services. (Id.)

Plaintiff vis-à-vis several isolated, one-sentence declarations, complains that: (1) ACJF has no law library; (2)

"religion services [are] violated [because there is] no designated place to assemble[;]" and (3) ACJF only offers "recreation and fresh air once or twice a week, maybe." (Id.)

Plaintiff does not claim to have directly interacted with any of the four defendants identified in his pleading, nor does he claim that any of the four named defendants have been made aware of Plaintiff's specific grievances.

Instead, Plaintiff's claims against Warden Geraldine Cohen appear to arise solely out of Warden Cohen's supervisory responsibilities at ACJF to "[make] sure [all ACJF inmates/prisoners'] needs are accommodated and making sure each department within the facility is in compliance with the facility rules towards all prisoners." (See Compl. ¶ 3.)

Plaintiff's claims against Cheryl DeBoise likewise appear to be based solely on her role as an ACJF medical supervisor. Indeed, although Plaintiff fails to detail any specific actions undertaken by Ms. DeBoise which have directly caused him harm, Plaintiff claims that Ms. DeBoise deprived him of his constitutional rights by "intentionally ignor[ing] the fact that her staff are failing to screen, diagnose and give adequate medical attention." (Id.)

Plaintiff's claims against Atlantic County Executive Dennis Levinson and Atlantic County Chairman Frank Formica similarly appear to arise out of their respective roles as Atlantic

County's executive and the chairman of its governing body. Indeed, other than asserting that these defendants have deprived him of his constitutional rights because they have intentionally ignored the fact that ACJF "is not in compliance[,]" Plaintiff does not make any specific factual allegations against either of these defendants. (Id. at Attached Sheet.) Plaintiff requests an award of $2,500,000.00 in monetary damages. (Id. at ¶ 5.)

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a Sua Sponte Dismissal

District courts must review complaints in those civil actions in which a person is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). This statute directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) because Plaintiff is proceeding as indigent.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte

screening for failure to state a claim,[2] the complaint must

allege "sufficient factual matter" to show that the claim is

facially plausible.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210

(3d Cir. 2009) (citation omitted).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Belmont v. MB

Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012)

(quoting Iqbal, 556 U.S. at 678); see also Iqbal, 556 U.S. 662,

679 (2009) ("Determining whether a complaint states a plausible

claim for relief [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common

sense.").

Moreover, while pro se pleadings are liberally construed,

"pro se litigants still must allege sufficient facts in their

complaints to support a claim."  Mala v. Crown Bay Marina, Inc.,

704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## 2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. §

1983 for certain violations of his constitutional rights.

---

[2]    "The legal standard for dismissing a complaint for failure
to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is
the same as that for dismissing a complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6)."  Schreane v. Seana, 506 F.
App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229
F.3d 220, 223 (3d Cir. 2000)).

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> . . . subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding
> for redress. . . .

42 U.S.C. § 1983.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

For the reasons detailed infra, Plaintiff's Complaint will be dismissed without prejudice for failure to state a claim.

B. Analysis

1. Conditions of Confinement

As noted above, Plaintiff's Complaint sets forth a litany of grievances about the conditions at ACJF. Many of these factual allegations fall under the ambit of a Section 1983 "conditions of confinement" claim. Plaintiff fails to specify whether he was a pretrial detainee or a convicted prisoner while

housed at ACJF.[3]  In considering Plaintiff's constitutional

challenges to his conditions of confinement, this distinction

has some bearing.  Indeed, whereas, pretrial detainees are

protected from punishment under the Fourteenth Amendment's Due

Process Clause, convicted inmates are protected only from

punishment that is cruel and unusual under the Eighth Amendment.

Bell v. Wolfish, 441 U.S. 520, 535–36, 536 n.16 (1979); accord

Mestre v. Wagner, 488 F. App'x 648, 649 (3d Cir. 2012) (noting

that plaintiff's claims would be governed by the Fourteenth

Amendment if he were pretrial detainee and by the Eighth

Amendment if he were a convicted prisoner) (citing Hubbard v.

Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (hereinafter "Hubbard

I"); Hubbard v. Taylor, 538 F.3d 229, 331 (3d Cir. 2008)

(hereinafter "Hubbard II").  Indeed, "pretrial detainees are

entitled to greater constitutional protection than that provided

by the Eighth Amendment."  Hubbard I, 399 F.3d at 167 n. 23.

     In spite of this distinction, there is significant overlap

in how Plaintiff's conditions of confinement claim is analyzed,

regardless of whether he is a pretrial detainee or a convicted

inmate.  See Keller v. Cty. of Bucks, 209 F. App'x 201, 205 (3d

---

[3]    On June 23, 2017, the Court received a letter from Plaintiff
requesting that all correspondence in this matter be sent to the
Millville, New Jersey address listed above.  (See ECF No. 3.)
It therefore appears that Plaintiff may no longer be detained at
ACJF.

Cir. 2006) (the parameters of an "unconstitutional conditions of
confinement [claim under the] Fourteenth Amendment . . . are
coextensive with those of the Eighth Amendment's prohibition
against cruel and unusual punishment.") (quoting Surprenant v.
Rivas, 424 F.3d 5, 18 (1st Cir. 2005); see also Southerland v.
Cnty. of Hudson, 523 F. App'x 919, 921 (3d Cir. 2013) (in
analyzing a conditions of confinement claim under the Fourteenth
Amendment, the central question is whether the alleged
conditions constitute punishment).

For example, a prisoner asserting an Eighth Amendment
conditions of confinement claim must show that the alleged
deprivation is "sufficiently serious" and that he has been
deprived of the "minimal civilized measure of life's
necessities[,]" i.e., food, clothing, shelter, sanitation,
medical care, and personal safety.  See Farmer v. Brennan, 511
U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 452 U.S. 337,
347 (1981)); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249,
256 (3d Cir. 2010) (citations omitted).  Likewise, "[p]ursuant
to the [Fourteenth Amendment], prison officials must satisfy
"basic human needs - e.g., food, clothing, shelter, medical
care, and reasonable safety." Brooks v. Camden Cty. Jail, No.
1:17-cv-975(JBS), 2018 WL 747374, at *4 (D.N.J. Feb. 7, 2018)
(citing Helling v. McKinney, 509 U.S. 25, 32 (1993); see also
Ford v. Essex Cty. Jail, No. 2:17-cv-4864 (JMV), 2017 WL

4919234, at *5 (D.N.J. Oct. 31, 2017) ("[t]o state a
constitutional violation [under the Fourteenth Amendment], a
[pretrial detainee] must allege facts suggesting the conditions
of confinement were severe enough to deprive him of a basic
human need.") (citing Wilson v. Seiter, 501 U.S. 294, 305
(1991)).

Moreover, when analyzing a conditions of confinement claim,
be it under the Eighth Amendment or the Fourteenth Amendment,
this Court considers the conditions in their totality.  See Nami
v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (setting forth Eighth
Amendment standard); Garcia v. Lancaster Cnty. Prison, No. 13-
2018, 2014 WL 176608, at *6 (E.D. Pa. Jan. 15, 2014) (citing
Hubbard I, 399 F.3d at 160; Wright v. Atl. Cnty. Justice
Facility, No. 1:10-cv-6101 (RBK), 2010 WL 5059561, at *6 (D.N.J.
Dec. 2, 2010) (considering the totality of the deprivations
alleged to determine whether plaintiff had stated a Fourteenth
Amendment conditions of confinement claim).  "Relevant
considerations [under the Eighth Amendment] include the length
of confinement, the amount of time prisoners must spend in their
cells each day, sanitation, lighting, bedding, ventilation,
noise, education and rehabilitation programs, opportunities for
activities outside the cells, and the repair and functioning of
basic physical facilities such as plumbing, ventilation, and
showers."  Nami, 83 F.3d at 67 (citing Tillery v. Owens, 907

F.2d 418, 427 (3d Cir. 1990)); accord Riley v. DeCarlo, 532 F.

App'x 23, 26 (3d Cir. 2013) (per curiam).

Similarly, when analyzing a conditions of confinement claim

under the Fourteenth Amendment, this Court must inquire as to

whether the totality of the conditions "'cause [inmates] to

endure genuine privations and hardship over an extended period

of time, [such] that the adverse conditions become excessive in

relation to the purposes assigned to them.'"  Hubbard I, 399

F.3d at 159-60 (citations omitted); see also Bell, 441 U.S. at

540 ("[r]estraints that are reasonably related to the

institutions interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial.").

Moreover, because prison officials must ensure that

convicted inmates and pretrial detainees receive adequate food,

clothing, shelter, and medical care, and must '"take reasonable

measures to guarantee [their] safety[,]'" Farmer, 511 U.S. at

832 (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)), a

Section 1983 plaintiff asserting a conditions of confinement

claim must also allege that prison officials acted with

deliberate indifference to that plaintiff's health or safety.

See Wilson v. Seiter, 501 U.S. at 298–99; see also Wilson v.

11

<u>Burks</u>, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam)

("'[T]he official must both be aware of facts from which the

inference could be drawn that a substantial harm exists, and he

must also draw that inference.'") (quoting <u>Farmer</u>, 511 U.S. at

837).  Indeed, unconstitutional punishment – be it under the

Eighth Amendment or the Fourteenth Amendment – typically

includes both objective and subjective components.  <u>Stevenson v.

Carroll</u>, 495 F.3d 62, 68 (3d Cir. 2007).

> [T]he objective component requires an inquiry into
> whether "the deprivation [was] sufficiently serious" and
> the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]"

<u>Id.</u> (citing <u>Wilson v. Seiter</u>, 501 U.S. at 298; <u>Bell</u>, 441 U.S. at

538–39, 539 n.20).

Among ACJF's conditions which Plaintiff complains about are

(1) overcrowding, <u>e.g.</u>, triple-bunking and an inadequate number

of showers for the current ACJF population; (2) unsanitary

conditions, <u>e.g.</u>, mold and mildew infested showers and frequent

sewage backups; (3) price gauging at ACJF's commissary; (4)

inadequate outdoor recreation opportunities; (5) malfunctioning

doors; and (6) subpar food.  Each of these specific claims will

be discussed in turn, and ultimately, will be considered in

their totality to determine whether Plaintiff's conditions of

confinement claim will be permitted to proceed.  <u>See</u> <u>Nami</u>, 82

F.3d at 67; <u>Garcia</u>, 2014 WL 176608, at *6; <u>Wright</u>, 2010 WL

5059561, at *6.

a. Overcrowding

Plaintiff complains that three men share a cell designed
for one person.  Plaintiff does not, however, indicate if he
personally has been assigned to a triple-bunked cell, nor does
he specify how long he has been forced to share a cell with two
other individuals.  The mere fact that an individual is lodged
temporarily in a cell with more persons than its intended design
does not, in and of itself, rise to the level of a
constitutional violation.  See Rhodes, 452 U.S. at 348–50;
Carson v. Mulvihill, 488 F. App'x 554, 560 (3d Cir. 2012)
("there is no 'one man, one cell principle lurking in the Due
Process Clause of the Fifth Amendment.'" (quoting Bell, 441 U.S.
at 542).  Indeed, pretrial detainees – whose conditions of
confinement are governed by more stringent constitutional
standards – do not have a right to necessarily be free from
triple-bunking.  See Hubbard II, 538 F.3d at 236; see also North
v. White, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam)
("triple-bunking cells, alone, is not per se unconstitutional.")
(citing Union Cnty. Jail Inmates v. DiBuono, 713 F.2d 984, 1000
(3d Cir. 1983)).

Plaintiff also complains about the limited number of
showers at ACJF.  Plaintiff specifically claims that there are
only two showers per 48-60 ACJF inmates.  Plaintiff does not,

however, indicate how this ratio has directly impacted him.  He
does not, for example, specify how often he is permitted to
shower, e.g., daily, weekly, etc., nor does he allege any facts
which suggest that the showers he takes are otherwise
inadequate, e.g., that his showers are limited in duration, that
there is inadequate hot water, etc.  Without these additional
facts – and a definitive understanding as to whether Plaintiff
is confined at ACJF as a pretrial detainee or as a convicted
prisoner – this Court is unable to find that ACJF's limited
number of showers, per se, supports a prima facie Section 1983
conditions of confinement claim.  Compare, e.g., Monmouth Cnty.
Corr. Inst. Inmates v. Lanzaro, 595 F. Supp. 1417, 1432 (D.N.J.
1984) (finding inadequate hot water as one of numerous factors
contributing to unconstitutional conditions of confinement for
both inmates and pretrial detainees); Grohs v. Yatauro, 984 F.
Supp. 2d 273, 285 (D.N.J. 2013) (finding civilly confined
plaintiff's complaint stated plausible constitutional claim in
light of holdings in Lanzaro, among others); with, e.g., Dockery
v. Beard, 509 F. App'x 107, 113 (3d Cir. 2013) (limiting
plaintiff to one shower every three days does not violate the
Eighth Amendment).

        b. Unsanitary Conditions

    Plaintiff details certain unsanitary conditions at ACJF.
Plaintiff complains that the "showers [have] black mold and

                              14

mildew painted over" and that "most inmates complain[] about dizziness or sickness to their stomach after showering." (Compl. at ¶ 4.)  Plaintiff does not himself, however, claim to have suffered from dizziness or sickness after showering. Plaintiff also fails to indicate how long this condition has existed at ACJF.  Plaintiff also complains about ACJF's "sewage waste back-ups."  Plaintiff claims that "inmates/prisoners are moved from pod to pod or gym regularly" in response to these backups, and further alleges that these backups are insufficiently cleaned by non-professional, "court compelled community service people."  (Id.)  Plaintiff, however, fails to specify how long this condition has persisted, fails to specify the frequency with which such waste backups occur, and fails to explain how these waste backups have impacted him personally.

The Court recognizes that unsanitary conditions frequently support cognizable Section 1983 conditions of confinement claims.  See, e.g., Daniels v. Taylor, No. 1:13-cv-5510 (RBK), 2014 WL 3955372, at *5-6 (D.N.J. Aug. 13, 2014) (allowing plaintiff's conditions of confinement claim to proceed past sua sponte screening where plaintiff complained of, inter alia, "mold and insect infested show[ers]" which caused him to develop a foot fungus); Hargis v. Atl. Cty. Justice Facility, No. 1:10-cv-1006 (JBS), 2010 WL 1999303, at *8 (D.N.J. May 18, 2010) (allowing pretrial detainee's conditions of confinement claim to

proceed where plaintiff "plainly [alleged, inter alia,] that he [was] frequently splashed with urine, feces, and toilet water while sleeping on the floor for nine months").

Here, however, Plaintiff's general allegations are insufficient.  In failing to specify the frequency with which sewage waste backups occur, and for how long the waste back up and shower issues he complains of have persisted, Plaintiff has failed to allege sufficient facts showing that he was subjected to genuine privation and hardship over an extended period of time.  Plaintiff has also failed to explain how the sewage backups and moldy showers have caused him direct harm.  In addition, Plaintiff has failed to allege facts which plausibly suggest that any of the named defendants have affirmatively been made aware of the specific unsanitary conditions which Plaintiff complains of.  See, e.g., Holloway v. Cappelli, No. 1:13-cv-3378 (NLH), 2014 WL 2861210, at * 5 ("Plaintiff's general allegations are insufficient to satisfy either the objective or subjective component [of the conditions of confinement analysis].").

### c. Price-Gauging at the Commissary

Plaintiff also complains about the prices of items sold at the ACJF commissary.  Plaintiff specifically alleges that the ACJF commissary engages in "price gauging," as evidenced by the fact that it charges $1.16 for one package of ramen noodles, $.61 for an oatmeal packet, and $3.25 for indigent kits.

(Compl. at ¶ 4.)  These allegations fail to support a
constitutional violation.  See Pelzer v. Shea, 470 F. App'x 62
(3d Cir. 2012) (inmate has no protected liberty interest in
commissary privileges); Landor v. Lamartiniere, 515 F. App'x
257, 259 (5th Cir. 2013) (same); Grady v. Garcia, 506 F. App'x
812, 814–15 (10th Cir. 2013) (same); see also Planker v.
Christie, No. 3:13-cv-4464 (MAS), 2015 WL 268847, at *22 (D.N.J.
Jan. 21, 2015) ("The loss of commissary purchasing privileges
does not violate the Constitution.").

    d. Malfunctioning Doors

    Plaintiff asserts that doors at ACJF frequently
malfunction, and that this "causes all types of problems[,
e.g.,] eating late, missing court, etc." (Compl. at ¶ 4.)
Plaintiff's allegations regarding the conditions of ACJF's doors
fail to support a cognizable Section 1983 claim.  See Planker,
2015 WL 268847, at *24 (cell door with rusted and jagged edges,
which went unrepaired in spite of plaintiff's requests, failed
to support an actionable constitutional violation); see also
Bell, 441 U.S. at 540 ("[r]estraints that are reasonably related
to the institutions interest in maintaining jail security do
not, without more, constitute unconstitutional punishment, even
if they are discomforting and are restrictions that the detainee
would not have experienced had he been released while awaiting
trial.").

e. Limited Recreation

Plaintiff appears to complain about the limited outdoor recreation afforded to persons confined at ACJF.  (See Compl. at ¶ 4 ("[R]ecreation and fresh air once or twice a week, maybe.").)  Plaintiff does not plead any other facts or otherwise provide additional context in support of this claim. It therefore is wholly unclear how much time each outdoor recreation session lasts, e.g., one hour, three hours, etc.  It is also unclear if Plaintiff receives additional indoor recreation.

While the denial of exercise or recreation in some circumstances may result in a violation of the Eighth Amendment, see Peterkin v. Jeffes, 855 F.2d 1021, 1031–33 (3d Cir. 1988), "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." Fantone v. Herbik, 528 F. App'x 123, 127 (3d Cir. 2013) (citation omitted); see also Gattis v. Phelps, 341 F. App'x 801, 805 (3d Cir. 2009); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (denial of outdoor recreation for thirteen days not cruel and unusual punishment); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (forty-five minutes of exercise per week not constitutionally infirm).  At least one court in this district has applied these considerations with similar force to a pretrial detainee's denial of recreation claim.  See Allah v. Ocean Cty. Jail, No.

1:06-cv-2181 (MLC), 2006 WL 1455777, at *4-5 (D.N.J. May 19, 2006).  Thus, even the minimal provision of time for exercise and recreation may satisfy constitutional requirements.  Gattis, 341 F. App'x at 805 (citing Wishon, 978 F.2d at 449; Knight, 878 F.2d at 1096).

Here, Plaintiff's one-sentence allegation about the limited opportunities for outdoor recreation at ACJF fails to plausibly suggest that his constitutional rights have been violated. Plaintiff does not allege any resulting harm or injury.  In addition, Plaintiff does not assert that he is precluded from indoor exercise and recreation; his Complaint only speaks to the limited opportunities for outdoor recreation at ACJF.  Plaintiff has therefore failed to allege facts supporting a cognizable Section 1983 denial of recreation claim.  Planker, 2015 WL 268847, at *16 ("alleged denial of outdoor recreation is not sufficiently serious to deprive the prisoner of the minimal civilized measure of life necessities"); see also Gregorio v. Aviles, No. 2:11-cv-2771 (WJM), 2013 WL 1187096, at *6 (D.N.J. Mar. 20, 2013) (dismissing pretrial detainee's denial of outdoor recreation claim where detainee was denied outdoor recreation for ten months); Wyland v. Brownfield, No. 08-1601, 2011 WL 5445305, at *7 (W.D. Pa. Nov. 9, 2011) (dismissing denial of outdoor exercise claim where plaintiff failed to allege that he was precluded from any form of exercise or that he sustained a

specific injury from lack of exercise).

### f. Plaintiff's Food-Related Claims

Plaintiff's Complaint sets forth numerous grievances about the food served at ACJF.  Plaintiff avers that the food portions are inadequate, that leftovers are frequently served, and that "90% of the time [in the aggregate] food is not cooked, cold or objects are found."  (Compl. at ¶ 4.)  Plaintiff does not, however, further specify what percentage of the time the food, respectively, contains foreign objects, or is served cold, or is uncooked.  Moreover, Plaintiff does not claim that the food itself is inedible or nutritionally deficient.

The constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)."  Duran v. Merline, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citations omitted).

As to the first prong, "[w]hether the deprivation of food falls below [the constitutionally objective] threshold depends on the amount and duration of the deprivation."  Duran, 923 F. Supp. 2d at 720 (citing Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999)).  "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, see Natale v. Camden

Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003), inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." Duran, 923 F. Supp. 2d at 720 (citations omitted); Mora v. Camden Cty., No. 1:09-cv-4183 (JBS), 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)). Indeed, "isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." Duran, 923 F. Supp. 2d at 720. Likewise, "[b]eing served cold meals . . . is not 'punishment' under Bell. So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation[.]" Id.

Plaintiff, while alleging that "90% of the time [the food served at ACJF] is not cooked, cold or objects are found[,]" does not claim that any of this food fails to provide him with adequate nutrition or that it is served under conditions which present an immediate danger to his health and well-being. Plaintiff similarly fails to claim that the supposed substandard fare caused more than temporary discomfort. Without facts demonstrating substantial nutritional deprivation, such as how frequently the alleged constitutionally infirm food was served, for how long during his dates of confinement Plaintiff was arguably compelled to eat this food, and the injuries – if any – Plaintiff sustained from such food, this Court cannot find that

Plaintiff has stated a cognizable constitutional claim; that is, without additional facts such as these, Plaintiff has met the objective prong of the constitutional analysis.

Moreover, Plaintiff has not alleged that any of the named defendants possessed the requisite culpability to satisfy the subjective component of the constitutional analysis. As noted above, Plaintiff must establish that ACJF officials acted with "deliberate indifference" to his needs, meaning that they were subjectively aware of the alleged conditions and failed to reasonably respond to them. Duran, 923 F. Supp. 2d at 721 (citing Farmer, 511 U.S. at 829, and Mora, 2010 WL 2560680, at *9). Plaintiff has not offered any facts from which this Court can reasonably infer deliberate indifference by the named defendants with respect to Plaintiff's various grievances about the food served at ACJF.

Given that Plaintiff has failed to demonstrate facts suggesting that: (1) the food served to him at ACJF presented an objectively serious risk of nutritional deficiency (regardless of Plaintiff's dislike of the food he was provided); and (2) that ACJF officials responsible for feeding Plaintiff knew of that risk and were deliberately indifferent to it, Plaintiff's specific complaints about the food served at ACJF fail to plausibly allege a constitutional violation.

g. Totality of the Conditions

Having considered the foregoing allegations separately, the Court also considers them in their totality. However, even in combination, this Court finds that the foregoing allegations are insufficient to support a cognizable Section 1983 conditions of confinement claim. Plaintiff fails to allege that the food he is receiving is nutritionally inadequate. The moldy showers and frequent sewage backups, while unpleasant, are not alleged to have caused Plaintiff harm. Plaintiff's living conditions, while tight, are not devoid of necessary sleeping facilities. The alleged scarcity of showers, too, is not alleged to have created conditions akin to punishment. The limited outdoor recreational time, while less than ideal, is not constitutionally infirm. The prices charged by the commissary and ACJF's frequently malfunctioning doors fail similarly fail to support a finding that Plaintiff's constitutional rights have been violated.

In short, individually inadequate claims do not add up to a viable conditions of confinement claim under either the Fourteenth Amendment or the Eighth Amendment. See Grohs v. Santiago, No. CIV. 2:13-cv-3877 (KM), 2014 WL 4657116, at *8 (D.N.J. Sept. 17, 2014). As such, Plaintiff's conditions of confinement claim will be dismissed without prejudice.

## 2. Retaliation

Plaintiff's Complaint appears to relatedly allege that when ACJF inmates complain about the quality of food, they are retaliated against. (See Compl. at ¶ 4 ("[T]o question the issue you are threatened, other times locked down.").) "[R]etaliation for the exercise of constitutionally protected rights . . . 'is itself a violation of rights secured by the Constitution actionable under section 1983.'" Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (quoting White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990)).

In order for Plaintiff's retaliation claim to survive sua sponte dismissal, Plaintiff must allege sufficient facts demonstrating that: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered an "adverse action" at the hands of ACJF officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015); accord Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002).

The facts alleged in Plaintiff's Complaint fail to satisfy these pleading requirements. As an initial matter, it appears that Plaintiff would have a constitutionally protected right to

complain about the quality of food served at ACJF to prison officials.  See, e.g., Williams v. Hull, No. 08-135, 2009 WL 1586832, at * 11 (W.D. Pa. June 4, 2009) (implicitly finding that plaintiff's request for "a grievance to complain about the inedible food" was constitutionally protected); accord Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011) (per curiam) ("the filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity.").

That being said, Plaintiff has failed to plead any facts which suggest that he himself ever complained to ACJF officials – either formally or informally – about the quality of food served at ACJF.  Plaintiff similarly fails to allege that he himself suffered any adverse action at the hands of any ACJF official because he complained about the food.  As such, Plaintiff has failed to allege sufficient facts suggesting that his right to file formal grievances or otherwise complain to ACJF officials about the quality of its food has been hindered. Plaintiff therefore has failed to state a cognizable Section 1983 retaliation claim.

3. Access to Courts

Plaintiff complains that ACJF does not have a law library. (Compl. at ¶ 4.)  It therefore appears that Plaintiff is attempting to assert a denial of access to courts claim.

Prisoners have a right of access to the courts under the

First and Fourteenth Amendments.  Bounds v. Smith, 430 U.S. 817,

821 (1977).  Pretrial detainees enjoy a similar right of access

to the courts with respect to legal assistance and participation

in one's own defense against pending criminal charges.  See,

e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000);

Hargis, 2010 WL 1999303, at *6.  This right requires that

"adequate, effective, and meaningful" access be provided for

inmates who wish to challenge their criminal charge, conviction,

or conditions of confinement.  Bounds, 430 U.S. at 822.  This

constitutional right of access to the courts is not, however,

unlimited.  Indeed, there is no constitutional requirement that

ACJF have a law library at all.  See id. at 828 ("the

fundamental constitutional right of access to the courts

requires prison authorities to . . . prov[ide] prisoners with

adequate law libraries or adequate assistance from persons

trained in the law.") (emphasis added).

As noted above, Plaintiff's Complaint simply notes that

ACJF does not have a law library.  Plaintiff has not, however,

pled any additional facts to suggest that ACJF has also failed

to provide him "adequate assistance from persons trained in the

law."  Plaintiff has similarly failed to suggest that he has

suffered any actual injury – cognizable under Section 1983 or

otherwise – as a result of ACJF's lack of a law library.

Indeed, Plaintiff has failed to in any way articulate how ACJF's

lack of a library has caused him direct harm.  Plaintiff,
therefore, has not pled sufficient facts demonstrating that he
has been denied access to the courts in a manner which can give
rise to a cognizable Section 1983 claim.

4. First Amendment Free Exercise Claim

Plaintiff also alleges that "religion services [are]
violated [because there is] no designated place to assemble."
(See Compl. at ¶ 4.)  Plaintiff has not provided any additional
context as to how ACJF's purported lack of a "designated place
to assemble" has personally impacted him.  Indeed, Plaintiff
does not claim to have any affiliation with any particular
denomination, nor does he explain how ACJF's lack of a
designated assembly area has affected his ability to engage in
specific religious practices.

The Free Exercise Clause of the First Amendment prohibits
prison officials from denying an inmate "a reasonable
opportunity of pursuing his faith."  See Cruz v. Beto, 405 U.S.
319, 322 & n. 2 (1972).  However, "[o]nly beliefs which are both
sincerely held and religious in nature are protected under the
First Amendment."  Sutton v. Rasheed, 323 F.3d 236, 251 (3d Cir.
2003) (citation and internal quotation marks omitted).  Here,
Plaintiff's Complaint is bereft of any facts to suggest that he,
personally, has any sincerely held religious beliefs.  As such,
Plaintiff has failed to plausibly allege that ACJF's purported

lack of a designated place of assembly has denied him the

opportunity to pursue his faith.[4]

## 5. Denial of Adequate Medical Care

As noted above, Plaintiff complains that a federal inmate

he was housed with had scabies.  Plaintiff attributes this to

ACJF's inadequate screening procedures, notwithstanding that he

simultaneously claims that his housing mate "claimed something

was itching him" two weeks after being housed with Plaintiff.

(See Compl. at ¶ 4.)  Plaintiff notes that the inmate was

formally diagnosed with scabies only after complaining of

itching to ACJF officials, and that upon being diagnosed, both

Plaintiff and that inmate were segregated from the rest of the

ACJF population and were otherwise treated.  (Id.)  Notably,

Plaintiff does not allege that he himself also contracted

scabies; only that he was also segregated.  (Id.)  Plaintiff

---

[4]    Even if Plaintiff pled sufficient facts suggesting that
ACJF's purported lack of a designated place to assemble impacted
his personal, sincerely-held religious beliefs – and he has not
– it is far from certain that he would have an actionable free
exercise claim.  Indeed, "prisoners' exercise of First Amendment
freedoms may be curtailed when, in the informed judgment of
prison officials, such exercise poses 'the likelihood of
disruption to prison order or stability, or otherwise interferes
with the legitimate penological objectives of the prison
environment.'"  Wilson v. Schillinger, 761 F.2d 921, 925 (3d
Cir. 1985) (quoting Jones v. North Carolina Prisoners' Labor
Union, 433 U.S. 119, 132 (1977)) see also Tirone v. Trella, No.
2:03-cv-257(SRC), 2007 WL 3170098, at *7 (D.N.J. Oct. 29, 2007)
(analyzing the merits of a pretrial detainee's free exercise of
religion claim using this standard) (citing Stevenson v.
Carroll, 495 F.3d 62, 67-68, 68 n. 3. (3d Cir. 2007).

also complains that ACJF charges for medical and dental
services. (See id. ("All medical and dental services
charged.").) Plaintiff has not, however, provided any
additional factual context in support of this assertion. In
making the foregoing allegations, Plaintiff appears to be
complaining about the purported inadequacies of the medical care
provided at ACJF.

As detailed above, the Eighth Amendment prohibits the
states from inflicting "cruel and unusual punishments" on those
convicted of crimes. Rhodes, 452 U.S. at 344-46. This
proscription requires that prison officials provide inmates with
adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04
(1976). Pretrial detainees also have a constitutional right to
receive adequate medical care; this right, however, is grounded
in the due process protections the Fourteenth Amendment, as
opposed to the Eighth Amendment. See Natale, 318 F.3d at 581.
This Court applies the Eighth Amendment standard set forth in
Estelle when evaluating a Fourteenth Amendment due process claim
for inadequate medical care by a detainee. Banda v. Adams, 674
F. App'x 181, 184 (3d Cir. 2017) (citing Natale, 318 F.3d at
581).

In order to set forth a facially plausible Section 1983
denial of adequate medical care claim, Plaintiff must allege:
(1) a serious medical need; and (2) behavior on the part of

prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106 (1976).

Serious medical needs which will satisfy the first prong of Estelle include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical needs.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer, 511 U.S. at 837-38.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met. . . .  Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'

Lanzaro, 834 F.2d at 346 (citations omitted).

The Third Circuit has found "deliberate indifference" in a

myriad of situations, including:

> 'where the prison official (1) knows of a prisoner's
> need for medical treatment but intentionally refuses
> to provide it; (2) delays necessary medical treatment
> based on a non-medical reason; . . . (3) prevents a
> prisoner from receiving needed or recommended medical
> treatment;' and (4) 'where the prison official
> persists in a particular course of treatment in the
> face of resultant pain and risk of permanent injury.'

McCluskey v. Vincent, 505 F. App'x 199, 202 (3d Cir. 2012)
(citations omitted).

However, it also remains "well-settled that claims of
negligence or medical malpractice, without some more culpable
state of mind, do not constitute 'deliberate indifference.'"
Id. (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).
Accord Andrews v. Camden Cty., 95 F. Supp. 2d 217, 228 (D.N.J.
2000) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).

Here, Plaintiff has failed to plead any facts to suggest
that any ACJF official – much less the specific defendants named
in his Complaint – acted with constitutionally actionable
"deliberate indifference" to his medical needs, i.e., that
defendants knew of Plaintiff's need for medical treatment but
intentionally refused to provide it, or delayed necessary
treatment for non-medical reasons, or prevented Plaintiff from
receiving needed or recommended treatment, or persisted in a
particular course of treatment in the face of resultant pain or

risk of permanent injury. <u>McCluskey</u>, 505 F. App'x at 202.

Instead, the factual allegations detailed by Plaintiff, <u>i.e.</u>,

that the inmate whom Plaintiff was housed with was formally

diagnosed with scabies only after complaining of itching to ACJF

officials, and that upon being formally diagnosed, both

Plaintiff and that inmate were segregated from the rest of the

ACJF population and were otherwise treated, suggest that ACJF

officials promptly provided appropriate medical care upon being

informed that Plaintiff's housing mate had excessive itching.

Notably, Plaintiff fails to allege any facts that suggest that

ACJF charged Plaintiff or his housing mate for these services,

and likewise fails to in any way suggest that ACJF officials

withheld medical treatment pending receipt of payment.

Plaintiff has similarly failed to allege any facts showing

how ACJF's policy of charging inmates – even if true – for

dental and medical services has in any way adversely impacted

him. His one sentence allegation that "all medical and dental

services [are] charged" fails to provide any specificity or

detail, <u>e.g.</u>, which specific medical services he himself

received while confined at ACJF, when those services were

provided, how much ACJF charged and ultimately required

Plaintiff to pay before providing those services, <u>etc.</u> In light

of the foregoing, Plaintiff's Complaint, as pled, fails to

allege sufficient facts demonstrating that the medical treatment

he received while confined at ACJF was constitutionally
inadequate.  As such, the above-referenced facts do not support
a facially plausible Section 1983 claim under Estelle.

6. Supervisor Liability

For the reasons detailed above, Plaintiff has failed to
plead sufficient facts which plausibly suggest that his
constitutional rights have been violated in a manner giving rise
to an actionable Section 1983 claim.  Even if Plaintiff's
Complaint alleged sufficient facts to support facially plausible
violations of his constitutional rights – and he has not – the
Court would still dismiss Plaintiff's Complaint against all
named defendants, i.e., Warden Geraldine Cohen, Atlantic County
Freeholder Frank Formica, Atlantic County Executive Dennis
Levinson, and Cheryl DeBoise, because there are no factual
allegations which plausibly suggest that any of these defendants
had any personal involvement in the decisions and actions
Plaintiff complains of.  See Ashcroft v. Iqbal, 556 U.S. 662,
676 ("a plaintiff must plead that each Government official
defendant, through the official's own individual actions, has
violated the Constitution.").

Indeed, Plaintiff fails to allege that he had any direct
interactions with any of the four defendants formally named in
his Complaint.  Plaintiff likewise fails to plead any facts
which would allow this Court to reasonably infer that any of

these defendants were in any way aware of the specific issues and grievances detailed in Plaintiff's pleading. Instead, each of these individuals appear to have been named as defendants solely in light of their supervisory responsibilities at ACJF.

As a general matter, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. The Court notes that "a supervisor may [nonetheless] be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Tp., 629 F.3d 121, 129 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). The Court also recognizes that a supervisor may be liable for an Eighth Amendment or Fourteenth Amendment violation if the plaintiff "identif[ies] a supervisory policy or procedure that the supervisor defendant failed to implement, and proves that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure." Barkes v.

First Correctional Medical, Inc., 766 F.3d 307, 316 (3d Cir. 2015), rev'd on other grounds sub nom. Taylor v. Barkes, 135 S. Ct. 2042 (2017).

Here, however, it clear that Plaintiff has not alleged any facts that support a finding of supervisory liability against Warden Cohen, Freeholder Formica, Executive Levinson, or Cheryl DeBoise.  As noted above, Plaintiff's Complaint fails to allege sufficient facts which plausibly suggest that the conditions of his confinement at ACJF are in any way constitutionally inadequate.  Even if he had, Plaintiff has still failed to allege additional facts which suggest that any of the specific defendants named in his pleading should be held liable for the acts committed by their subordinates or for implementing policies and procedures which resulted in the conditions which Plaintiff complains of.  As such, this Court would still dismiss Plaintiff's Complaint against each of those defendants.

In sum, Plaintiff has failed to state any federal claim for relief.  Any remaining potential basis for this Court to consider Plaintiff's state law claims – to the extent he is attempting to assert any – lies within the Court's supplemental jurisdiction.  28 U.S.C. § 1367.  However, when a court has dismissed all claims over which it had federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims.

35

See id. at § 1367(c)(3).  This Court will exercise its

discretion to decline supplemental jurisdiction over the state

law claims Plaintiff may additionally be seeking to pursue.

III. CONCLUSION

     For the foregoing reasons, Plaintiff's Complaint will be

dismissed without prejudice as to all defendants.  Because it is

conceivable that Plaintiff may be able to supplement his

pleading with facts sufficient to overcome the deficiencies

noted herein, Plaintiff shall be given the opportunity to file a

proposed amended complaint should he elect to do so that shall

also be subject to screening.[5]  An appropriate Order follows.


Dated: May 29, 2018                   s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[5]     Plaintiff should note that when an amended complaint is
filed, it supersedes the original and renders it of no legal
effect, unless the amended complaint specifically refers to or
adopts the earlier pleading.  See West Run Student Housing
Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171
(3d Cir. 2013)(collecting cases); see also 6 Charles Alan Wright
& Arthur R. Miller, Federal Practice and Procedure § 1476 (3d
ed. 2008).  To avoid confusion, the safer practice is to submit
an amended complaint that is complete in itself.  Id.